No. 25-5158

In the United States Court of Appeals
for the Sixth Circuit

———————————————

UNITED STATES OF AMERICA,
Plaintiff–Appellee,

V.

JOSHUA WHITE,
Defendant–Appellant.

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
No. 3:21-CR-155 (Hon. David J. Hale)

———————————————

**ANSWERING BRIEF FOR THE UNITED STATES**

———————————————

KYLE G. BUMGARNER
United States Attorney
Western District of Kentucky

AMANDA E. GREGORY
Assistant United States Attorney
United States Attorney's Office
717 W. Broadway
Louisville, KY 40202
PH: (502) 582-5016
FAX: (502) 582-5097
Email: amanda.gregory@usdoj.gov
Attorney for the United States

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................i

TABLE OF AUTHORITIES .................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ................................v

STATEMENT OF THE ISSUES..............................................1

STATEMENT OF THE CASE..................................................1

> Homeland Security Investigations Received a Tip That White's IP Address Was Used to Access a Child Pornography Website, Obtained a Search Warrant for White's Devices, and Discovered Child Pornography ...............1

> The Grand Jury Charged White and White Filed Multiple Pretrial Motions ....................................................................................4

> White Pled Guilty to Misprision of a Felony and Was Sentenced to 12 Months and a Day ...........................................................................5

SUMMARY OF ARGUMENT ....................................................5

ARGUMENT ..........................................................................7

I.    THE DISTRICT COURT CORRECTLY DENIED WHITE A *FRANKS* HEARING ........................................................................7

    A.    Standard of Review .............................................................7

    B.    This Court Should Ignore the Meritless Argument Regarding Alleged False Statements Regarding the Foreign Law Enforcement Investigation That Were Not Raised in the District Court...................8

    C.    The District Court Did Not Clearly Err in Finding the Specified Statements from the Affidavit Were Neither False nor Omitted Important Information ..........................................................10

II.   THE DISTRICT COURT CORRECTLY DENIED WHITE'S MOTION TO SUPPRESS ........................................................................13

    A.    Standard of Review ...........................................................13

B.    <u>"New" or "Continued" Searches of Electronic Data Seized Pursuant to the Search Warrant Did Not Violate White's Fourth Amendment Rights</u>.................................................................................14

C.    <u>The Court Should Decline to Consider White's New Meritless Argument that the 2023 Searches Were Illegal Under the Civil Asset Forfeiture Reform Act</u>.........................................................17

D.    <u>The District Court Correctly Found the Searches Did Not Exceed the Scope of the Warrant</u>..........................................................18

E.    <u>The Good Faith Doctrine Would Apply If the Additional Searches Were Not Permitted or If the Searches Were Outside the Scope of the Warrant</u>...............................................................20

CONCLUSION.....................................................................................21

CERTIFICATE OF SERVICE ..............................................................22

DESIGNATION OF RECORD ..............................................................23

# TABLE OF AUTHORITIES

<u>CASES</u>

*Franks v. Delaware*, 438 U.S. 154 (1978)........................................................ Passim

*Mays v. City of Dayton*, 134 F.3d 809 (6th Cir. 1998) ......................................12, 13

*United States v. Bennett*, 905 F.2d 931 (6th Cir. 1990).............................................7

*United States v. Castro*, 881 F.3d 961 (6th Cir. 2018) ..................................... Passim

*United States v. Davis*, 84 F.4th 672 (6th Cir. 2023).........................................12, 13

*United States v. Elmore*, 18 F.4th 193 (6th Cir. 2021) ............................................13

*United States v. Frechette*, 583 F.3d 374 (6th Cir. 2009).........................................19

*United States v. Gregoire*, 638 F.3d 962 (8th Cir. 2011) .........................................15

*United States v. Johnston*, 789 F.3d 934 (9th Cir. 2015)...................................15, 20

*United States v. Leon*, 468 U.S. 897 (1984) ...........................................................21

*United States v. Loines*, 56 F.4th 1099 (6th Cir. 2023) ...........................................14

*United States v. Miller*, 588 F. App'x 445 (6th Cir. 2014) ......................................21

*United States v. Paull*, 551 F.3d 516 (6th Cir.2009) ...............................................19

*United States v. Pirosko*, 787 F.3d 358 (6th Cir. 2015).......................................8, 17

*United States v. Sweeney*, 891 F.3d 232 (6th Cir. 2018) .........................................13

*United States v. Sykes*, 65 F.4th 867 (6th Cir. 2023) ..............................................16

*United States v. Whipple*, 92 F.4th 605 (6th Cir. 2024)....................................16, 17

*United States v. Wagers*, 452 F.3d 534 (6th Cir.2006)............................................19

*United States v. Young*, 847 F.3d 328 (6th Cir. 2017)...............................................7

STATUTES

18 U.S.C. § 2252A(a)(5)(B) ............................................................4, 18, 19

18 U.S.C. § 2252A(b)(2)............................................................................4

FEDERAL RULES, GUIDELINES and MISCELLANEOUS

Fed. R. Crim. P. 11(a)(2) ...........................................................................8

Fed. R. Crim. P. 41................................................................................18

U.S. Const. Amend. IV ........................................................................14, 15

Civil Asset Forfeiture Reform Act.............................................................17

## STATEMENT REGARDING ORAL ARGUMENT

Because the issues have been thoroughly addressed in the briefs, and are not complex, the United States believes oral argument is unnecessary.

## STATEMENT OF THE ISSUES

1.     Whether the district court clearly erred in finding that White failed to provide evidence that statements from the search warrant affidavit were false or omitted material information.

2.     Whether the district court was correct in holding that the United States did not violate the Fourth Amendment by conducting more than one search of electronic data seized pursuant to a search warrant.

3.     Whether the district court was correct in holding that agents did not exceed the scope of the search warrant during a search of electronic data for evidence of access with intent to view or possession of child pornography.

## STATEMENT OF THE CASE

Homeland Security Investigations Received a Tip That White's IP Address Was Used to Access a Child Pornography Website, Obtained a Search Warrant for White's Devices, and Discovered Child Pornography.

Homeland Security Investigations ("HSI") Agents received information that a foreign law enforcement agency had determined that on April 11, 2019, IP address 104.49.245.246 was used to access a website used for exchanging links to images of child sexual abuse and exploitation.  (R. 298 Presentence Report 2272). HSI conducted its own investigation to confirm child pornography was available through the website.  (*Id*.).  HSI subpoenaed AT&T records and determined that Joshua White was the account holder for the IP address.  (*Id*.).  In 2021, based on

1

this information, HSI Special Agent John Koski sought and obtained a search warrant for electronic devices in White's residence. (*Id*.; R. 23-1 Search Warrant Affidavit 76-104).

The affidavit for the warrant stated Koski "received information from a foreign law enforcement agency" that in 2019 "IP address 104.49.245.246 'was used to access online child sexual abuse and exploitation material' *via* a website." (R. 23-1 Search Warrant Affidavit 89).    The affidavit stated United States law enforcement "did not participate in the investigative work through which [the foreign law enforcement agency] identified the IP address." (*Id*. at 91). The affidavit described the website as a place where users can share child pornography through links to other websites that contain child pornography. (*Id*. at 84-85). The affidavit made it clear that users must register with a username and password to access the website. (*Id*. at 85). The affidavit stated that since the website was a hidden service website on the Tor Network, it was "difficult, if not impossible" to find through a "Google-type search," and would likely be accessed through a directory website that listed web addresses for child pornography. (*Id*. at 88, 91). The affidavit surmised it was "extremely unlikely that any user could simply stumble upon [the website] without understanding its purpose and content." (*Id*. at 92). The affidavit then described how AT&T subscriber records indicated the

2

specified IP address was registered to White, and identified his home address. (*Id*. at 93).

During a search of White's home, HSI seized 29 electronic storage devices. (R. 228 Order 1438). HSI copied the devices, then began searching them. (*Id*.). The initial examination of a Western Digital Hard Drive revealed 23 images of child pornography in the recycler, unallocated space, and in thumb nail files. (R. 298 Presentence Report 2272). The images included "a close-up image of a nude baby/toddler's vagina with an adult penis partially penetrating the vagina," an image of a naked prepubescent female "exposing her breasts and vagina," and an image of an adult male anally penetrating a prepubescent girl with his penis. (*Id*.). The initial examination of a Hitachi Hard Drive revealed searches had been performed for "nude pre-teen," "immature vagina," and "preteen nude." (*Id*.). Law enforcement could not fully search some of the devices due to the presence of encryption software. (R. 228 Order 1438).

White sought return of all the seized electronic devices by filing a U.S. Customs Seized Asset Claim Form. (*Id.*). The United States retained four devices that contained child pornography or evidence of accessing child pornography, along with copies of all the devices, and returned the remaining devices to White. (*Id*. at 1438-39).

<u>The Grand Jury Charged White and White Filed Multiple Pretrial Motions.</u>

A federal grand jury charged White with accessing with intent to view child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2), and possession of child pornography involving a minor that had not attained 12 years of age, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). (R. 1 Indictment 1-2). A federal grand jury later returned a superseding indictment with the same charges and an amended date for the accessing charge. (R. 247 Superseding Indictment 1524-25).

HSI continued to search the four devices it retained, as well as the copies of the other devices. (R. 228 Order 1439). Eventually, HSI was able to decrypt some of the encrypted data, and found additional evidence of child pornography. (*Id*.). In January 2023, HSI found anti-forensic programs, designed to delete files and traces of files, and encryption programs on a Maxtor hard drive, along with 28 images of child pornography. (R. 298 Presentence Report 2273) Additional encryption and anti-forensic programs were discovered on other devices, along with one image of child pornography and one internet search for "lesbian preteen." (*Id*.).

White filed several pretrial motions, including a motion to suppress evidence from the "new" or "continued" searches of White's devices and a motion for a *Franks* hearing based on alleged false statements and omissions in the search

warrant affidavit.  (R. 171 Motion to Suppress Evidence from New Searches 723-30; R. 172 Motion for *Franks* Hearing 736-45).  The district court denied both motions.  (R. 228 Order 1438-49).

<u>White Pled Guilty to Misprision of a Felony and Was Sentenced to 12 Months and a Day.</u>

In October 2024, White pled guilty to misprision of a felony, charged in a one-count superseding information.  (R. 286 Superseding Information 2163; R. 289 Plea Agreement 2172-79).  Under the Plea Agreement, the United States agreed to dismiss the Indictment and the Superseding Indictment, and White agreed to waive the right to appeal or collaterally attack his sentence, though he specifically reserved the right to appeal the district court's order on his motion to suppress and his motion for a *Franks* hearing.  (R. 289 Plea Agreement 2175-76).  The district court sentenced White to 12 months and a day.  (R. 307 Judgment and Commitment Order 2399).

White now appeals the district court's decision denying his motion to suppress and the motion for a *Franks* hearing.

## SUMMARY OF ARGUMENT

1.    The district court correctly denied White's motion for a *Franks* hearing.  White failed to make a substantial showing before the district court that the affidavit contained any falsehoods.  On appeal, White relies on nothing but conclusory assertions to argue that certain statements are not true or omitted

5

material information.  White has also not provided evidence Koski knew any statements in the affidavit were false at the time he swore out the affidavit. Finally, White has failed to make a showing that Koski made any of the alleged omissions with intent to mislead.

2.     The district court correctly found additional searches of electronic data from the seized devices did not violate White's Fourth Amendment rights. The searches did not exceed the scope of the search warrant and the data had been secured.  As such, under this Court's precedent, additional searches of the data could be done without obtaining a new search warrant.

3.     The district court correctly found agents did not exceed the scope of the search warrant by continuing to search devices once they determined the devices had last been accessed years before the date White accessed the child pornography website.  The list of items to be seized in the search warrant did not contain date restrictions.  The search warrant authorized seizure of items that were evidence of accessing with intent to view child pornography and possession of child pornography.  The search warrant affidavit provided probable cause that individuals who possess child pornography keep it for years.

## ARGUMENT

**I.   THE DISTRICT COURT CORRECTLY DENIED WHITE A *FRANKS* HEARING.**

### A.   Standard of Review

"Whether to hold an evidentiary hearing based upon a challenge to the validity of a search warrant's affidavit, given alleged misstatements and omissions, is committed to the sound discretion of the district court." *United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017).   In "reviewing the district court's denial of a *Franks* hearing," this Court reviews "findings of fact for clear error and conclusions of law de novo." *Id*.

In *Franks v. Delaware*, the Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," the Court can order an evidentiary hearing. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).   The affidavit enjoys "a presumption of validity." *Id*. at 171.   As such, it is a "heavy burden" for the defendant to make the required "substantial preliminary showing." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).   "There must be allegations of deliberate falsehood or of reckless disregard for the truth" by the affiant. *Franks*, 438 U.S. at 171.   "[T]hose allegations must be accompanied by an offer of proof" and "[a]ffidavits or sworn

or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.* Conclusory statements are not sufficient. *Id.*

B.   <u>This Court Should Ignore the Meritless Argument Regarding Alleged False Statements Regarding the Foreign Law Enforcement Investigation That Were Not Raised in the District Court.</u>

Under Rule 11(a)(2) and the terms of White's plea agreement, this Court may consider only the suppression arguments that White made in the district court. Rule 11(a)(2) provides that a defendant can enter a conditional plea "reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." In his plea agreement, White preserved his right to appeal the denial of his motion to suppress and his motion for a *Franks* hearing. (R. 289 Plea Agreement 2176). He is restricted to raising the same arguments on appeal that he raised in those two motions, and has waived all other arguments. *See United States v. Pirosko*, 787 F.3d 358, 370-71 (6th Cir. 2015) (finding defendant waived the right to raise new suppression arguments where defendant pled guilty and waived all appellate rights, except appeal of the denial of his motion to suppress, as the plea agreement only preserved arguments made below).

One of the alleged misstatements White identifies on appeal is the statement in the affidavit that "United States law enforcement did not participate in the FLA's investigation." (*Id*. p. 23 (citing R. 228 Order 1437)). But White did not identify this as a misstatement in his motion for a *Franks* hearing to the district

8

court.  (R. 172 Motion for *Franks* Hearing 731-45).  As such, the district court did

not consider this argument in its order denying a *Franks* hearing.  (R. 228 Order

1445-49).  Because this is a completely new argument,[1] White has waived the

issue on appeal.

Even if this Court were to consider the argument, it is without merit.  The

affidavit acknowledges "a long history of United States law enforcement sharing

criminal investigative information" with the foreign law enforcement agency.  (R.

23-1 Search Warrant Affidavit 90).  The portions of the affidavit that denies the

United States' involvement states "United States law enforcement personnel did

not participate in the investigative work through which [the foreign law

enforcement agency] identified the IP address information." (*Id*. at 91).  While

White cites evidence of general United States involvement in a larger

investigation, he does not provide any evidence that there was United States

involvement in "the investigative work" of identifying White's IP address.  (White

Br. 23-24).  Likewise, he fails to show that if there was such involvement, Koski

had any knowledge of it at the time he wrote the affidavit.  (*Id*.).  Finally, there

---

[1] White made a separate argument about the United States's involvement in the foreign investigation in his Motion to Suppress "Fruit of the Poisonous Tree" Evidence.  (R. 189 Motion to Suppress "Fruit of the Poisonous Tree" Evidence 770-78).  But he did not use that motion to argue for a *Franks* hearing.  (*Id.*).

would still be probable cause in the search warrant even if the portions regarding the United States's lack of involvement in the foreign investigation were struck.

C.    The District Court Did Not Clearly Err in Finding the Specified Statements from the Affidavit Were Neither False nor Omitted Important Information.

The district court correctly determined that White did not meet any of the requirements necessary to trigger a *Franks* hearing.  White made no showing that Koski made any false statements knowingly and intentionally or with reckless disregard for the truth.

On appeal, White identifies two alleged falsehoods and two alleged material omissions, in addition to the alleged falsehood identified above regarding the foreign investigation.  (White Br. pp. 19-23).  First, White claims the statement "Affiant received and reviewed several files depicting child sexual abuse that were available on the TARGET WEBSITE when" the IP address accessed the website is a false statement because the website only had links, as opposed to actual images. (R. 23-1 Search Warrant Affidavit 90; White Br. pp. 19-21).   Second, White claims the statement describing three images that were available on the website when the IP address accessed it is a false statement because only links to the images were available on the website, rather than the images themselves.  (R. 23-1 Search Warrant Affidavit 90; White Br. p. 21).  Finally, White alleged that Agent Koski's affidavit contained two material omissions: (1) that White allegedly did

10

not have a username or password for the website and (2) that White's alleged

contact with the website "was of no duration of time."  (White Br. pp. 22-23).

As the district court correctly found, the affidavit's statements regarding

child pornography images being available on the website were not false or

misleading.  (R. 228 Order 1447-48).  The affidavit makes it clear that the means

through which child pornography was shared on the website was through links

rather than through actual image files.  (*Id.*).  The affidavit generally describes the

website as providing "its users with information about particular file hosting

websites where users could upload digital files so that the files could then be

shared, via links, with other users" on the website.  (R. 23-1 Search Warrant

Affidavit 85).  The affidavit states:  "On the front page of the site, it stated that the

site was intended for users to 'post links with good photos and videos' depicting

'[o]nly GIRLS 5 to 13 years [old].'"  (*Id*. at 84).  The affidavit goes on to clarify

that "[c]hild pornography images and videos were trafficked through this chat site

via the posting of web links within chat messages.  Links allowed a user to

navigate to another website, such as a file-hosting website, where image and/or

videos were stored in order to download these images and videos."  (*Id*. at 85).

The affidavit also states the website "provides users with links to image hosts

where users can upload their digital images" and describes how agents had

accessed images through links on the website.  (*Id*. at 88).  Placed in the context of

11

the rest of the affidavit, the statements that child pornography images were "available" on the website and the description of specific images that were "available" when the IP address visited the website are clearly references to links of images available on the website.

White also argues that "there was no evidence" the images that were described were available "at the time White allegedly accessed the site; only that they were available via a link [from the website] at the time the agent accessed them." (White Br. p. 21). But Koski could have reasonably inferred that links that were posted before the date White accessed the website, and still available when Koski accessed the site, were available at the time that White accessed the website.

With respect to the two alleged material omissions White identifies, the district court was correct in finding White had not met his burden. Although material omissions are "not categorically excluded . . . from the *Franks* inquiry, [this Court] ha[s] repeatedly held that a defendant must meet a 'higher' standard to invalidate a warrant based on an omission (rather than a false statement)." *United States v. Davis*, 84 F.4th 672, 681-82 (6th Cir. 2023) (citation omitted). Typically, "a defendant must prove that an officer omitted the information 'with an intention to mislead' (not just with recklessness) and that the omission of the information was 'critical to the finding of probable cause[.]'" *Id.* (quoting *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998)). Material omissions "are much less

12

likely to merit a *Franks* hearing than are affidavits including allegedly false statements." *Mays*, 134 F.3d at 815.

The district court correctly found White did not provide a substantial showing that (1) he did not have a username or password for the website or (2) his time on the website was of "no duration." (R. 228 Order 1448-49). Nor does White offer any evidence of this in his appeal. (White Br. pp. 22-23). Rather, White points to the lack of evidence that White had a password and username or that his time on the website was of some duration. (*Id*.). But in requesting a *Franks* hearing, White bears the burden of "an offer of proof," and he cannot meet it with bare statements or an attempt at burden shifting. *Franks*, 438 U.S. at 171. Moreover, even if White's claims were true, he has not even tried to prove that Koski knew they were true at the outset of the investigation when he was seeking the search warrant, and had the intent to mislead in omitting the information from his affidavit. (White Br. pp. 22-23); *see Davis*, 84 F.4th at 681-82.

## II.    THE DISTRICT COURT CORRECTLY DENIED WHITE'S MOTION TO SUPPRESS.

### A.    Standard of Review

This Court reviews the district court's factual findings regarding a motion to suppress for clear error and its legal conclusions de novo. *United States v. Sweeney*, 891 F.3d 232, 235 (6th Cir. 2018); *United States v. Elmore*, 18 F.4th 193, 198 (6th Cir. 2021). Because the district court denied the motion to suppress, this

Court "consider[s] the evidence in the light most favorable to the government." *United States v. Loines*, 56 F.4th 1099, 1105 (6th Cir. 2023) (internal quotations and citations omitted).

> B. "New" or "Continued" Searches of Electronic Data Seized Pursuant to the Search Warrant Did Not Violate White's Fourth Amendment Rights.

In this case, "HSI's search efforts were prolonged by the substantial encryption on some of the devices – encryption so strong that the government did not initially have the technology to break it." (R. 228 Order 1441). HSI located child pornography and evidence of searching for child pornography on two devices during an initial examination after seizure in 2021. (R. 298 Presentence Report 2272). However, it was not until 2023, through continued efforts to break encryption and find data in spite of the anti-forensic software, HSI was able to complete searches of portions of data and identify additional child pornography and evidence of searching for child pornography in data from two other devices. (*Id*. at 2273).

The district court was correct in relying on this Court's holding that law enforcement may conduct multiples searches of devices properly seized pursuant to a search warrant as long as the later searches are confined to evidence covered in the original warrant. (R. 228 Order 1440 (citing *United States v. Castro*, 881 F.3d 961, 967-68 (6th Cir. 2018)). In *Castro*, federal agents conducted a search of a cell

phone pursuant to a state search warrant, after state officers had already conducted a search pursuant to the same warrant. *Castro*, 881 F.3d at 966. This Court upheld the search, holding law enforcement "may conduct a more detailed search of an electronic device after it was properly seized so long as the later search does not exceed the probable cause articulated in the original warrant," even if the initial search was conducted "soon after the device's seizure" and officers "waited months or years to conduct a more intensive search." *Id.* (citations omitted). *Castro* is in accord with sister circuits that have held that the Fourth Amendment does not require law enforcement to secure a second search warrant to conduct additional review of a properly seized computer or cell phone – even where that review occurs months or years after the original warrant. *See United States v. Gregoire*, 638 F.3d 962, 967-68 (8th Cir. 2011); *United States v. Johnston*, 789 F.3d 934, 941-43 (9th Cir. 2015).

White attempts to distinguish *Castro* by imposing new limitations on *Castro*'s holding. First, White argues that additional searches are only permitted when there is evidence officers acted with "due diligence," which White claims is not the case here. (White Br. p. 31). Second, White argues that additional searches may only be conducted if there is new information which would cause officers to view the evidence in a new light. (*Id*. at p. 32).

*Castro* does not incorporate any "due diligence" limitation on its holding regarding additional searches. *See generally*, *Castro*, 881 F.3d at 966-68. In *Whipple*, the case that White cites to support his "due diligence" requirement, the defendant claimed the evidence from his phone should be suppressed because the government had not completed its search within the 14-day deadline for executing the warrant. *United States v. Whipple*, 92 F.4th 605, 614 (6th Cir. 2024). This Court rejected Whipple's argument, noting "law enforcement is allowed to decode or otherwise analyze data on a seized phone at a later time, even after the initial warrant expires." *Id*. The reference to "diligence" in *Whipple* was a citation to another case finding there was an unreasonable delay when a warrant to search a device had not been obtained until 31 days after the device had been seized. *Id*. (citing *United States v. Sykes*, 65 F.4th 867, 878 (6th Cir. 2023)). On the facts in *Whipple*, this Court found the "officers acted reasonably," as they "did not unreasonably delay in obtaining a warrant, nor did they delay after obtaining a warrant." *Id*. The same is true here, as officers searched the data available on the devices shortly after the warrant was obtained in 2021. Some of the data on the devices was not accessible in 2021 due to encryption. By 2023, there had been advances in encryption technology that enabled officers to break through some of the encryption, so they searched data that had been inaccessible in 2021. There was nothing that would qualify as an "unreasonable" delay. White seeks to impose

16

a standard that would require law enforcement to have a specific reason to explain every gap in time in searching, and penalize officers if they do not use new technology as soon as it becomes available.  Neither *Whipple* nor *Castro* require this.

Similarly, while *Castro* notes that additional searches of evidence are sometimes necessary because "new information" might cast "new light" on evidence, *Castro* did not hold this was a prerequisite necessary to justify additional searches of electronic data.  *Castro*, 881 F.3d at 966.  Rather, *Castro* is clear that the prerequisites are (1) that the additional search not exceed the scope of the original search and (2) that the electronic data to be searched is still secured.  *Id.* Additionally, in this case "new information," i.e. advances in encryption technology, did cast "new light" on the evidence, by enabling HSI to access previously inaccessible data.

C.    <u>The Court Should Decline to Consider White's New Meritless Argument that the 2023 Searches Were Illegal Under the Civil Asset Forfeiture Reform Act</u>

White raises for the first time on appeal the argument that the additional searches "likely violated the Civil Asset Forfeiture Reform Act."  (White Br. pp. 32-33).  As White did not make this argument to the district court, he waived it in his conditional plea.  *See Pirosko*, 787 F.3d at 370-71.  Even were this not the case, White cites no authority that electronic evidence seized and copied pursuant to a

17

Rule 41 warrant should be suppressed because the device the evidence came from was returned as a result of a claim through the civil asset forfeiture process.

D.    The District Court Correctly Found the Searches Did Not Exceed the Scope of the Warrant.

White argues that the searches exceeded the "scope of the warrant" because the crime being investigated was an attempt to access child pornography in 2019, while some of the devices that were searched had not been used since well before 2019.  (White Br. pp. 39-41).  White contends that once law enforcement realized a device had not been accessed since well before 2019, "probable cause dissipated" and no further search should have been done on the devices.  (*Id.* at 40).  But the warrant does not impose date limitations.   (R. 189-1 Attachment B to Search Warrant (Items to be Seized) 858-62).  Without reference to any dates ranges, the warrant describes items to be seized as "evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violation of 18 U.S.C. § 2252A(a)(5)(B)," including "child pornography," "child erotica," and "[r]ecords and information relating to sexual exploitation of children."  (*Id.* at 858, 860).  Thus, the searches were clearly within the literal scope of the warrant.

This Court has found that because "'the crime [of child pornography] is generally carried out in the secrecy of the home and over a long period,'" the time

limitations on staleness that apply to other crimes do not apply to child pornography crimes. *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (quoting *United States v. Paull*, 551 F.3d 516, 522 (6th Cir.2009) (citing *United States v. Wagers*, 452 F.3d 534, 540 (6th Cir.2006))). For the same reason, when there is probable cause to believe someone accessed a child pornography website on a specific date, there is probable cause to search for child pornography on his or her devices without limiting the search to that date. The district court highlighted specific portions of the search warrant affidavit that supported probable cause that individuals who "access with intent to view child pornography" will "'typically retain those materials and child erotica *for many years*.'" (R. 228 Order 1444 (emphasis added by district court) (quoting R. 23-1 Search Warrant Affidavit 96)). The district court concluded the search warrant affidavit supported probable cause of "'receipt or possession of child erotica in the years preceding 2019.'" (*Id.* (quoting R. 173 Supplement to Motion to Suppress 754)). The district court found the warrant did not limit the searches to the limited crime of accessing with intent to view child pornography in 2019, as the warrant authorized seizure of evidence related to a "violation of 18 U.S.C. § 2252A(a)(5)(B)" and "Section 2252A(a)(5)(B) criminalizes accessing with intent to view child pornography as well as the possession of child pornography." (R.

19

228 Order 1444-45 (quoting R. 189-1 Attachment B to Search Warrant (Items to be Seized) 858).

But even if the search warrant were narrowly focused on the crime of access with intent to view child pornography on a specific date, the searches would not have been outside the scope of the warrant.  Access with intent to view child pornography is a specific intent crime.  Prior possession of child pornography would be evidence that accessing a child pornography website on a later date was intentional.

### E.    The Good Faith Doctrine Would Apply If the Additional Searches Were Not Permitted or If the Searches Were Outside the Scope of the Warrant.

Even if the 2023 searches were not reasonable, HSI believed in good faith that they had a valid search warrant that enabled them to search the electronic devices once they broke through the encryption.  A plain reading of *Castro* and analogous out-of-circuit cases, support this belief.  *Castro*, 881 F.3d at 966-68; *Johnston*, 789 F.3d at 941-43.  HSI only searched for and seized evidence within the scope of the 2021 warrant.  Thus, even if this Court decides to limit *Castro*'s holding and find the 2023 searches unreasonable, it should find that HSI acted in good faith, and decline to exclude the evidence.  *Castro*, 881 F.3d at 969.

Similarly, "[i]f agents exceed the scope of a valid warrant, [this Court] will only exclude the seized evidence if the unauthorized portion of the search was

done in bad faith." *United States v. Miller*, 588 F. App'x 445, 448 (6th Cir. 2014) (citing *United States v. Leon*, 468 U.S. 897, 919–22 (1984)).  Here, even if the searches of devices that had not been accessed in years was outside the scope of the warrant, the agents acted in good faith given the plain language of the warrant.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

KYLE G. BUMGARNER
United States Attorney

*/s/ Amanda E. Gregory*
Amanda E. Gregory
Assistant United States Attorney
United States Attorney's Office
717 W. Broadway
Louisville, KY 40202
PH:(502)582-5911
Email: Amanda.Gregory@usdoj.gov
Attorney for the United States

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of July, 2025, I electronically filed the foregoing brief with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to Appellant's counsel.

/s/ Amanda E. Gregory
AMANDA E. GREGORY
Assistant United States Attorney

## DESIGNATION OF DISTRICT COURT RECORD

The government designates the following documents from the district court record:

| Docket No. | Document | Page ID # |
|---|---|---|
| 1 | Indictment | 1-5 |
| 23-1 | Search Warrant Affidavit | 76-88 |
| 171 | Motion to Suppress Evidence | 719-730 |
| 172 | Motion for Franks Hearing | 731-745 |
| 173 | Supplemental Motion to Suppress Evidence | 746-757 |
| 189 | Motion to Suppress "Fruit…" | 848-857 |
| 189-1 | Attachment B | 858-862 |
| 228 | Order | 1435-1454 |
| 247 | Superseding Indictment | 1524-1527 |
| 286 | Superseding Information | 2163-2165 |
| 289 | Plea Agreement | 2172-2179 |
| 298 | Presentence Report | 2268-2292 |
| 307 | Judgment | 2397-2404 |